This is 410-0266, People v. Vincent Trimble. We have for the appellant, Todd Reardon, and for the athlete, Anastasia Fox. Good morning, Your Honor. I'll try to be brief. Your Honor, I have set forward in my argument some things that are the bedrock of our society, and that is conflict-free counsel. What Mr. Trimble did initially was he filed a pro se brief, had no information other than innuendos that his client, or his attorney, may not have had her client's best interest at heart. That was summarily denied. In 2008, he received a letter in the penitentiary, which was supplied to the trial court, a file marked from Texas, oddly enough, where the putative victim lives and their three minor children, with a letter appearing to be authored by his attorney, giving, if you will, pointers and advice to the putative victim. And what I then proceeded to do was seek leave of court under the statute, 725 ILCS 522-1F, about filing a subsequent post-conviction proceeding. And from there, we had to show two things. Cause, and an objective factor that wasn't available, he should have argued it on his first post-conviction. I think we met that burden, and this letter was not available to him. It was sent to him fortuitously in the mail. By whom? We don't know at this point, Judge. I would assume, and I'm only assuming, if his three minor children, now one's 18, living with his mother and came across this letter, it's probably that person. Right now, it's at the speculative stage. But is that an objective factor? That's what I have to prove, an objective factor. This letter, what you told us in the past, Mr. Trimble, is that your attorney didn't have your best interest at heart. And I know your honors probably hear that argument a hundred times, if not a thousand times a year from disgruntled people sitting in the Illinois Department of Corrections. But what is unique to this case is, now he has it in black and white, an ostensible piece of evidence that says, I don't have your best interest at heart. In fact, I'm more worried about what the victim's wants and desires are. And in fact, I'm consulting her on matters of how I'm going to, if you will, sell you down the river. Well, realistically, if you're defense counsel in this kind of a case, you're going to talk to the victim. You're going to have communication with them and find out what the evidence is, aren't you? I think an attorney under the discovery rules has a duty to find out what all witnesses are going to testify about. But here, it's ostensibly different in that it doesn't appear to find out what evidence she may testify about. And what's unique to the Trimble case, and maybe I wasn't fully set forth, but I think you can read the appendix to this, there were multiple Trimble defense cases. There was a sexual assault where this lady was the alleged victim in Coles County, which she was acquitted of, which was occurring, if you will, predates the solicitation case. So Ms. Dyson, I'm assuming, did contact her in the beginning about case number one. Then we get case number two. But what's troubling is, September 30th, it isn't, you know, I don't want to talk to you no more about evidentiary matters. It's, I'm going to persuade him to plead guilty. And that's at 480 and the common law record, I think it's the first time it appears. It's attached to my brief. I plan on speaking with Vincent to persuade him to take, not take these cases to trial. And what's troubling is, it appears he's wanting to fight it, wanting to hire new counsel that is going to do what the client wants, not what I want. I'm going to persuade him to plead. So as, and the last paragraph is the most troubling. In order to expedite this, the communication between you and this office should cease. In lieu of the legal ramifications, and Vincent retain new counsel to proceed to trial. So does she have her client's best interest at heart? Or does she have the victim's wishes at heart? And as an attorney, you can't put anybody ahead of your client. Not the system, not the state, not the victim. Your undivided loyalty is to your client. And when you have divided loyalties, that's when the conflicts arise. And your honor, all we're asking for is a day to refile our petition, a second subsequent post-conviction. And then put the evidentiary burden on us. We were unilaterally not even given the right to file such a petition. Not that we heard evidence and it was denied. This is, you haven't raised anything objective. And I think we have. There are two letters in the record signed by Carol Dyson and the signatures appear to be identical. Do we have originals of these documents anywhere? I do not, Judge. This is what I obtained from the file. The first, what I say, the September 30th letter to Vincent was a copy when his mother obtained his entire legal file, if you will. What was not contained was what I call the Dyson to Angie tremble letter that was sent to my client with a postmarking that we have attached. It was not an original, it was a copy in the envelope we attached as an exhibit that this came from Texas. And that seems to be the crux of the state's argument not to make the argument for him. How do we know this isn't a forgery? They conceded at the hearing that it's authentic enough to go forward, if you will. We don't get to the forgery, bite that apple. Now they want to come to the public and say, it's a forgery, it's a sham, this is offset. And I conceded in my argument at the trial level. They conceded, for the purposes of that hearing, going forward with being able to leave, that it was authentic. My argument then was, Judge, and if I can't meet it at the higher burden, at the petition stage, not at the motion stage for leaving the petition stage, the judge says there's not enough evidence here, Ms. Dyson says no, that isn't hers, or Ms. Tremble says no, I never received that, I'm shut out of the water. But what happened in this case, I'm shot out of the water before I even get a file for the petition. And all we're asking is, does this raise an objective standard? The whole, is this a fraud, is this a sham, is this forgery? That's where the petition, for the petition evidence, not at the motion for leaving the file. For the purposes of the motion, it's my understanding the state conceded the authenticity of the letter. If not, we could have had an evidentiary hearing and I would have subpoenaed the necessary witnesses that this isn't my client's signature. Did you ask Ms. Dyson for an affidavit? I have not at this point because I thought it was non-evidentiary and it was consented to that that was her signature. In fact, they conceded at the last argument that it's conceded, for the purposes of going forward, it's authentic. And it's my understanding from the ARDC website, she's on suspension. For what? I don't know. It's non-disclosed. But that's for the petition stage, for me to bring Ms. Dyson in. I'm assuming she's going to either plead the fifth or deny that's her signature, but I don't know that at this point. Because at the motion stage, all I'm asking is, is this an objective piece of evidence that they conceded to? And it's objective in nature, yes. It's black and white. I haven't got Vince Krimble's best interests at heart. I've got Angie Krimble's interests weighing in on my decisions. What about their argument that he was aware that his attorney was communicating with... Well, and he doesn't deny that he was communicating because of the underlying sexual assault case that predates this. She had to inquire of her what she was going to testify about the sexual assault before we ever get into the solicitation of murder. There was two pending cases, actually there was three if you consider their divorce case that Ms. Dyson also was representing the gentleman on against Mrs. Krimble. There was an order of protection, and then there was the sexual assault, alleged sexual assault, which she was acquitted of. That was the basis of the order of protection, which she was pro se in the order of protection. She was not pro se in the divorce. So there would have been grounds perhaps for the OP, for the sexual assault, to have at least a dialogue. What's your testimony going to be? That's different, what your testimony is going to be, and communicating to her what the desired outcome is, and if you will, the defense strategy. That's different. What is your testimony going to be? Thank you for telling me what your testimony is going to be. This letter doesn't touch upon that. In fact, it insinuates that something sinister is afoot. He's looking for new counsel. He's looking for new counsel. He may take this to trial and win everything. It's like the cheating spouse, if you will. We should not be caught seeing one another because he's thinking of finding out. He may get new counsel and we may be exposed. In your honors, our Sixth Amendment, and the next argument the state makes is evidence of overwhelming guilt. Our Sixth Amendment right to conflict-free and competent counsel is even there for the guilty as seen. We don't get us up there and say, he's guilty as seen. We can give him a conflicted lawyer. It doesn't matter. The result's going to be the same. That isn't what our Constitution mandates. It's conflict-free, competent counsel. Not conflict-free counsel for the innocent. Conflicted counsel if evidence is overwhelming of guilt for the accused. That's not a requirement that's been set by our U.S. Supreme Court, the Illinois Supreme Court. It's unconflicted counsel. And then with that notion, judges, your honors, it's that it wasn't met in this case. We have a divided loyalty. She's more concerned, or at least equally concerned, of what Mrs. Trimble's desires are as her own clients. And how can you put the alleged victim ahead of your own client's interests? She's not the state attorney. She's not the attorney general. She was his defense counsel. And I don't know if your honors want, but is this the per se or actual? I would say it's a per se because you've now put into writing things of a personal nature. I know they've cited the Davis Moe, which are small communities. And I look at it like a Coles County situation. I know every probation officer and probably 80% of the police officers. Now, is that a personal? No, I can still represent clients because I know them. But this is one where you're actually having dialogue and communication and saying, that's like me going up to the probation officer in Lowell and saying, I really hope he gets waxed because he's no good SOP because I've represented him 100 times and you know he's a piece of trash. That's different than I know the person in passing. And the state is trying to distinguish this case as being one of those passing relationships. Well, of course she knew Angie. They were in a divorce litigation or this case. But what they don't have is the tangible letter. And I never found the case directly on point because I think it's so contrary to what I think an attorney should be doing is you're probably never going to find the letter. And it's odd that it wasn't in his case file. It gets mailed to him from Texas. And I think it's because it was a hidden relationship, the degree of which at this point we don't know, but we should be allowed to go forward with our second post-conviction proceeding and probe the level of it. And I conceded in my argument in the trial court, if it comes in and Ms. Dyson says this is the only letter I had with her, she was on the phone, wanted to know the status of the case, and I went right up to her office, then I'd probably lose it at the second post-conviction stage. But I shouldn't lose at the motion for leave to file that second post-conviction. And there is a distinguishable difference. I understand my burden is going to be much higher if your honors say let the man file his second post-conviction, he has raised the objective factors, and then have a full evidentiary hearing. If it comes to find out Ms. Dyson says she called me once, I wanted to get her off the phone, blah, blah, blah, there was no ongoing relationship, but we're being shut out of even getting to that opportunity. What if Ms. Dyson acknowledges, yeah, that's my letter to her, I regret it, and yes, perhaps I did have to write a plea. That's also a potential answer. But we have to be given the opportunity to get to those answers. And at the motion stage, we have to first file leave of court to get leave to file it. So all we're asking your honors to do is reverse the trial court and let him file the proposed second subsequent post-conviction. Tell me, this envelope that is attached as Exhibit C, addressed to Mr. Trimble, Yes, ma'am. Is it the record of that C515? 518, yes. I'm sorry, the punches obliterate what is at the top of the return address. Is this mailed from Mattoon, Illinois? No. Is that a name at the top? It's something, it's an address, apartment 621 Conroe, Texas. No, you're on the Texas one, I'm on the Mattoon one. Oh, the Mattoon one. It's the same writing, isn't it? I don't know. That's the friend's letter. Is that the anonymous friend's letter? That is the anonymous one, yes. So we don't know who lives at that address? No, in fact, I did an investigation before I filed my petition and there was no such person at that address. And we don't know who lives in the apartment 621 Conroe, Texas? I do not, no. And I understand that if we get late to file a second post conviction, my burden's going to be high. I have to go find Ivy Friends or someone who's registered at the post office box and find who all lives at that Conroe, Texas address. But my understanding is the state conceded the authenticity of Ms. Dyson's letter for the purposes of going forward on the motion, not the ultimate question of fact if it's truly authentic at the petition stage. Yes, I understand my burden. It's very hard to meet, Your Honor. I just want the opportunity to have that burden placed upon my shoulders. Thank you. Thank you, counsel. Ms. Brooks? Did you concede at the trial level? Trial court? Can I first identify myself for the record? Please do. May I please the court and counsel, my name is Anna Scotchy Brooks. I'm representing the people in this case. And with respect to your question, Your Honor, I don't remember exactly what the transcript said, but when the defendants put in this reply brief about how the state conceded that the letter, okay, it does say for the purposes of the hearing. There's no cite to the record. I haven't had a chance to review the record since I received the reply brief, so I don't remember exactly what the concession, if any, was with respect to perhaps the purposes of the hearing, for example, would not bar the state from arguing, for example, in a second stage post-conviction or evidentiary hearing as well, that the letter is, in fact, not authentic. Because, for example, we don't know what Carol Dyson might say if she was brought in for an affidavit. Either the state or the defense could present an affidavit for her and determine what her position would be prior to an evidentiary hearing. But what it seems like the defense is trying to do is use a potential third stage evidentiary hearing for the purposes of assembling their showing of a case of ineffective assistance for conflicted counsel. And it seems like what the evidentiary hearing is supposed to be about is whether the defendant can prove that their allegations are true. And they haven't alleged, sufficiently alleged, the conflict of interest because even the defense attorney admits that just this letter alone is not enough, perhaps, to show a per se conflict of interest without something more that hasn't been produced or even alleged at this point. So the evidentiary hearing is only for the purposes of determining whether allegations are true, not for the defendants to engage in discovery, for example. So one of the reasons why the defendant cannot go forward with his petition at this stage is just because the subsequent petition hasn't identified any cause, objective factor, impeding him from raising his claim in his first post-conviction petition. And his affidavit, his own affidavit, rebutts what the defense attorney's position was in their brief, which is that he had no reason to suspect that there was any division of loyalties, but yet his own affidavit refers to the fact of not just knowing about communications, but also saying that it appears that Dyson was starting to take Angie Trimble's side more than his own side. So he did suspect divided loyalties prior to pleading guilty, according to his own affidavit. And when the defense reply brief fails to cite the record for what defense counsel now characterizes as defendant's explanations for what he meant in his affidavit, but yet this court cannot go outside of the record on appeal and engage in speculations or defend his assertions that aren't contained in the record, but merely in one of his briefs on appeal. So for that reason, there's no cause to go forward. He also has to show prejudice. When the state cited the Anderson case, in a case in which leave to file had been denied and in which the appellate court considered a question of prejudice by looking at whether the defendant would either have proceeded to trial, and if he had proceeded to trial, whether he could have been acquitted. And in this case, state's arguments show, and I'm not sure if the defendant here is still contesting state's arguments about overwhelming evidence, but the state did respond to the arguments in his brief with respect to the fact that there was no identified person that he had obtained to do the actual murder, in the sense that the state's witness had arranged for an undercover police officer, who obviously would have been a feigning agreement. The defendant decided not to meet that undercover officer, according to the overhear. But there was, under the law, there does not have to be an actual person hired to do the actual murder as long as he goes through the intermediary. Here is Eichelberry. And she says, I have my man and we're ready to do it. And the defendant agrees to that and agrees for money. Here was $1,000 with $100 paid in advance. And we know it's paid in advance because he tells Eichelberry, now it's only going to be $900, I've already paid you $100. So there is a procurement of somebody to commit murder for hire, even though there was no identified name. For example, Eichelberry says, her man. She doesn't say who that person is, and even if that person doesn't exist, because Eichelberry's, by the time that this agreement happens, Eichelberry's already working with the state police and these are on overhear. So there's a feigning of agreement, but since this is a solicitation case and not a conspiracy case, it only requires what would be considered a unilateral conspiracy, in such that one side is actually agreeing and the other side can feign agreement. And the other basis of the defendant's arguments is that he withdrew the picture that he had given to Eichelberry for the purposes of identifying his intended victim of this murder for hire plot. But by that time, he'd already seen, according to overhear, he'd already seen an undercover police car, a van, that he suspected might be a setup. Eichelberry didn't leave the scene, so he comes back, he grabs his evidence, and he even admits to the police later in a custodial interview after his arrest that he makes various admissions that shows that he suspected that this was a setup. So at that point, he's only attempting to withdraw evidence of his previous agreement. And at that point, it does not show that he never intended to go through with this, because the overhear is littered with references to, that's what I hear, and that's great, and this is what we want to have happen, and references to making it look like a robbery, for example. So the evidence is overwhelming that this is what he had intended to do, and this is what was already confirmed. According to his own perspective, these plans were confirmed, and he was just waiting on Monday morning to arrive. And of course, he's arrested prior to that. For example, even if this court agrees with the defendant's arguments that this letter should be presumed authentic, the state was merely trying to point out, because it's not a situation where there is a photocopy where the photocopy is shifted over, and it's not a completely centered up photocopy. This is a situation where the text of the letter upon which the defendant is relying is shifted over with respect to the margin. The margins of the body are shifted over with respect to the signature line and with respect to the letterhead. So in that circumstance, because of the identity... But it's a photocopy. It's a photocopy, Your Honor, but if it were a photocopy of a legitimate letter from Carol Dyson, then the body would not just be shifted by itself, but the entire letterhead and signature would be shifted vis-a-vis the entire letter. In other words, just taking the body and shifting it over with respect to the signature line, which is identical, to another letter of the same date and the letterhead. So in a sense, what it looks like could have happened is that somebody unknown had typed up using the same font as the September 30 letter from Carol Dyson to defendant, and then copied over that new text into a copy of the letter from Carol Dyson to defendant, but addressed to Angie Trumbull containing the new text. The only way the defendant can win is essentially if Carol Dyson had done that herself in order to try to deflect suspicion on these... The theory would be far-fetched. Essentially, just looking at the letter itself, it's apparent that this was manufactured. It could not be authentic because of the shift in margin in the identity and signatures. But even assuming that if it has to be presumed authentic for the purposes of this issue alone, the state wants to make sure that this court does not somehow either grant him an evidentiary hearing in this appeal or grant him a new trial, for example, because the defendant does admit that there are issues to be resolved here with respect to the authenticity of this letter. So if the defendant is permitted to go forward because he has made a showing of cause of prejudice, then the only relief that he should get in this appeal would be to leave the file, essentially, and go forward with the post-conviction proceedings. So that's one reason why the state is contesting the authenticity letter in this appeal. With respect to the conflict of interest issue, the defendant assumes that when the cases talk about an association between the defense attorney and the victim, that this letter qualifies. But yet the cases the state cite, particularly Lewis, mentions that this association refers to a conflict in professional commitments. Because the whole purpose of presuming prejudice, the reason why we have a per se conflict rule in Illinois, according to Lewis in the Illinois Supreme Court, is it's inadvisable policy to subject attorneys to the ordeal of trying to fairly discharge conflicting professional obligations. And this case does not involve any professional obligation proceeding from Carol Dyson to Angie Trimble. And if this is an authentic communication, it does not show that there was, in fact, an attorney-client relationship between Carol Dyson and Angie Trimble. So that was the only way. If the defendant can establish that there is, in fact, an existing attorney-client relationship, such as in the cases the defendant cites Washington, Pfeiffer, Hernandez, then he could fit under the per se ruling. He would not have to show a prejudice, which is a conflict contributing to the conviction. So if all he can show is an actual conflict of interest arising from this letter, a prejudice, then he's still going to have to show somehow that this conflict of interest contributed to his decision to plead guilty. And when he decided to plead guilty, he didn't take the first offer. The offer referred to in the September 30 letter that was addressed to him, he declined that offer and he went to trial in his Coles County case and was acquitted,  which is the minimum sentence, 20 years out of a range of 20 to 40, for solicitation of murder for hire. Since he had no way of disputing whether by insanity or by entrapment, by lack of intent, or any possible basis of challenging the case against him, it was sound advice and he actually received a good deal. So what he's trying to do here is unwind a plea. He's already served 10 years out of a 20-year sentence. He would effectively have to serve 85% of that 20-year sentence. So he's more than halfway served his sentence, but if he undoes the plea and he's facing overwhelming evidence, he's essentially asking for him to be convicted and sentenced to a possible 20 to 40, because the state would not be barred by its agreement to impose 20 if it had to go to trial. So all the penalties would be open at that point if he were to have his plea undone and go to trial, and because evidence is overwhelming, he would almost assuredly get convicted. And if he's going to try to make a showing of prejudice, this court can't engage in speculation for, well, what if the jury nullifies? What if the jury doesn't want to follow the law? The law, of course, meaning that a defendant who procures somebody who is only feigning agreement is guilty of solicitation of murder for hire. So that law would have to be followed by a jury, for example, because that's what they will be instructed if this case ever does go to trial. So for those reasons, the defendant cannot possibly show an actual conflict of interest. There's no conflicting professional commitment that's apparent from the letter, so there's no per se conflict. The defendant cannot show either cause of prejudice, and for that reason, the trial court correctly denied leave for him to file a subsequent post-conviction petition. If this court has no further questions, I'd like to thank you for your time and request this court to affirm. Thank you. Rebuttal. Again, and the state has raised it again, that there's overwhelming guilt, and that the jury will refine him guilty. All we're wanting is our day in court to file a second post-conviction proceeding. Have we raised something that was not raised in the first one? Yes. He didn't have the letter. Does that substantiate some of the claims he was making about his counsel? I think it helps bolster them that, yes, this lady doesn't have this vested interest at heart. And, Your Honors, that's all we're wanting, is leave to file that second post-conviction proceeding. What happens thereafter? We would have to prevail on that to get a new trial. At this stage, all we're wanting is the right to file it, or the relief to file it, not to prevail on it, the right to file it. That's all we're asking for. And then we can get into, is this authentic? And as far as conceded, I think the transcripts attached of the hearing with the state, we say that appendix to the brief, the last transcript. The transcript dated May 20th of 2010. It's the last, if you will, part, appendix to my original brief before we got into the table of contents. And it's at page 8 and 9 of that. It talks about accepting it as true. They were of the opinion that in and of itself that letter doesn't create a per se conflict, even if it's true. And, Your Honor, it was our position that accepting that letter as true as they stated would rise to the level of being granted leave to file a second post-conviction proceeding. They did concede, and I won't say that they did, that at the ultimate question of fact, at the second petition level, that it's authentic. But for the most purposes, it was a matter of saying they conceded. And then they're saying, and despite that letter, that ain't enough. It's not a conflict per se. It's not even really a conflict. And I think that belies all the arguments of non-conflicted counsel. It does raise questions. It does raise an aura of overreaching, basically giving up your client's best interest for that of the putative victim. And I guess that has no place in our justice system. You can feel sympathy, but you can't show it, and you sure as heck don't write about it. You have admission, and that is to defend not only the innocent, but the guilty. And that's what counsel keeps trying to refer back to. It doesn't matter if he's guilty of sin. She can engage in as many conflicts as she wants to, because he's guilty of sin. The Constitution's there to protect us all. The freedom of speech is there to protect the Nazi and the communists, and the liberal and the green and the Democrat and the Republican. Thank you. Thank you, Counsel.